FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2009 MAY -5 PM 4:04
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 108-157 |
| | ) | |
| SYLVESTER WRIGHT | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has charged Defendant Sylvester Wright of two counts of being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e). The matter is now before the Court on Defendant's motion to suppress evidence found at his residence following the execution of a search warrant at his residence. (Doc. no. 26). On February 26, 2009, the Court conducted an evidentiary hearing and heard oral argument on these matters.[1] Upon due consideration of the relevant

---

[1] After the conclusion of the hearing, defense counsel filed a motion (doc. no. 38) requesting an extended period of time to file a supplemental brief in support of his motion to suppress; the motion was predicated on information counsel had obtained after the hearing, including a letter from the government containing information pursuant to Giglio v. United States, 405 U.S. 150 (1972), concerning credibility issues with testimony provided in 1999 by the government's witness in Allen v. Thomas, CV 194-020, doc. no. 93 (S.D. Ga. July 7, 2000) (hereinafter "CV 194-020"). The Court granted the motion and allowed the government ten days to respond to the supplemental filing. (Doc. no. 39). After the government responded to the supplemental brief and defense counsel moved to file another supplemental brief, the Court determined that a supplemental evidentiary hearing would be required. (Doc. nos. 40, 46-48). On March 31, 2009, the Court scheduled the supplemental hearing; however, the parties subsequently stipulated that the supplemental hearing was not necessary, and that the matter was fully briefed.

testimony and evidence, as well as the arguments of counsel, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

I. **FACTS**

On March 7, 2008, Lieutenant David Stevens ("Lt. Stevens") of the Lincoln County Sheriff's Office ("LCSO") presented an Affidavit and Application for Search Warrant ("Affidavit and Application") to the Honorable Leverta Elam, Magistrate Judge of Lincoln County, Georgia, to search Defendant's residence at 1362 Firetower Road, Lincolnton, Georgia. (Id. at Exs. 1, 3). The Affidavit and Application bears a time stamp of 4:03 p.m. (Id. at Ex. 1). "Exhibit B" – the basis of the probable cause for the search warrant issued on the basis of the Affidavit and Application – bears the time stamp of 6:14 p.m.[2] (Id. at Ex. 2). The warrant to search Defendant's residence issued by Judge Elam bears the time stamp of 4:04 p.m. (Id. at Ex. 3). The search warrant was executed at 6:30 p.m. (Id. at Ex. 4). Thus, in looking at the time stamps alone, it appears that the events serving as probable cause for the search warrant occurred after the search warrant was issued.

A. **Evidentiary Hearing**

At the evidentiary hearing, the government called on Lt. Stevens to explain the apparent time discrepancy between the Affidavit and Application, including Exhibit B, and the time that the search warrant was issued. In drafting affidavits and applications for

---

[2] Of note, the property receipt for the controlled buy indicates that Lt. Stevens received into evidence 6, full 12 ounce cans of beer that had been purchased by the confidential source ("CS") from the kitchen area of Defendant's residence (the basis for Exhibit B) at 5:15 p.m. on March 7, 2008.

search warrants, Lt. Stevens explained that the LCSO uses a computer program in preparing search warrants. (FTR 10:22:45-10:23:33).[3] This computer program automatically time stamps the document at the time the document is prepared and printed; however, the time stamp does not reflect the time that the actual document is signed. (Id.).

Lt. Stevens described the events that occurred on March 7, 2008, in obtaining the search warrant for Defendant's residence as follows. Lt. Stevens explained that he and reservist Hudson Bell ("Mr. Bell") with the LCSO were conducting surveillance on Defendant's residence and that the CS was with them while they were conducting this surveillance. (FTR 10:19:39-10:20:48). At this time, Investigator Hancock ("Inv. Hancock") from the LSCO began drafting the Affidavit and Application per Lt. Stevens's request. (Id.).

Some time during this surveillance, Lt. Stevens gave the CS what he believed to be a $20.00 bill (though he was not certain of the bill denomination) so that the CS could undertake a controlled buy of alcohol (beer) from Defendant's residence. (FTR 10:29:08 - 10:29:54; 10:41:18 - 10:41:22). A property receipt shows that at 5:15 p.m., on March 7, 2008, the CS purchased 6, full 12 ounce cans of beer from the kitchen area at Defendant's residence at 1362 Firetower Road. (Doc. no. 26, Ex. 5). At the hearing, Lt. Stevens testified that to his knowledge, the $20.00 bill was not recovered. (FTR 10:41:18 - 10:41:30). Additionally, Lt. Stevens testified that the CS did not know who had sold him the beer and that the purchase occurred from the livingroom area of Defendant's residence.

---

[3] Although a transcript of the February 26, 2009 hearing has not been prepared, the Court was able to review the proceedings on the Court's recording system, For the Record ("FTR").

3

According to Lt. Stevens, Inv. Hancock also prepared Exhibit B based on Lt. Stevens's oral statements based on surveillance. (FTR 10:24:09 - 10:25:02). Of note, Lt. Stevens testified that Exhibit B was prepared prior to the controlled buy. (Id.). Once the controlled buy had been completed and the warrant application had been prepared, Lt. Stevens drove to Judge Elam's residence to present her with the Affidavit and Application. (FTR 10:31:58 - 10:32:10). He testified that Judge Elam read the documentation and asked questions as she reviewed the documents. (FTR 10:33:50 - 10:34:25). However, he admitted that he did not know how closely she read the documents and that she did not question him concerning the time discrepancies. (FTR 10:34:33-10:35:04).

Lt. Stevens further testified that despite what the time stamp reflected, the Affidavit and Application was presented to Judge Elam at 6:15 p.m. – the time that he had written on the documents – after the controlled buy had occurred and all documentation had been prepared. (FTR 10:25:50-10:26:02). According to Lt. Stevens, the search warrant was then executed at 6:30 p.m. An inventory receipt based on items found in the residence reflects that ammunition, a Hi-Point 9 mm gun, and various alcohol related items were recovered. (FTR 10:30:00 - 10:31:26; doc. no. 26, Ex. 6).

### B. Defendant's Supplemental Brief

After the hearing, Defendant submitted a supplemental brief. (Doc. no. 40). Following the February 26th hearing, defense counsel contacted Judge Elam regarding her meeting with Lt. Stevens and the application for the search warrant. (Id. at 2). Judge Elam informed defense counsel (and corroborated her statement in an affidavit attached to

Defendant's supplemental brief (Exhibit 7)) that:

> [W]hen presented with [the] Affidavit, [she] did not thoroughly read all of the four documents and did not notice at that time, the incorrect times printed on the documents. [She] concentrated primarily on the paragraph in Exhibit B that stated that a confidential informant had illegally purchased alcohol at the Defendant's residence within the past seventy two hours and the oral statement to the same effect from Lt. Stevens. [She] did not use any other facts or circumstances other than this written and oral statement to form the basis of the probable cause to order the issuance of the search warrant.

(Id. at 2-3, Ex. 7, ¶¶ 2). Additionally, Defendant relied heavily on the Court's findings approximately 10 years ago, that Lt. Stevens's testimony in CV 194-020 was less than credible. It appears to be Defendant's argument that, taking into consideration Lt. Stevens's less than credible testimony in CV 194-020, Lt. Stevens must have fabricated the controlled buy in the instant case because Lt. Stevens testified inconsistently with some of the evidence provided. Defendant also provided several other attachments and affidavits in support of his argument that the investigation of Defendant was politically motivated. However, these allegations are irrelevant as to the matter before the Court, whether a valid warrant was issued, and thus, the Court need not address those allegations at this time.

### C.  Government's Response to Defendant's Supplemental Brief

In response to Defendant's supplemental brief, the government provided the affidavits of Inv. Hancock and Mr. Bell. (Doc. no. 46). Inv. Hancock maintains that per Lt. Stevens's request, he prepared the Affidavit and Application related to the suspected illegal alcohol sales at Defendant's residence. (Id. at Ex. G-1, ¶ 2). The Affidavit and Application were prepared "using a software program available through LCSO which automatically

inserts a date and time on the subject documents when they are printed." (Id.). Inv. Hancock further maintains that he has reviewed the Affidavit and Application at issue in this investigation and notes that the date and time stamp on those documents reflect the time and date when the documents were printed. (Id. ¶ 3). The time stamps do not reflect the time these documents were presented to Judge Elam. (Id.).

Furthermore, Inv. Hancock explains:

> In my experience as a law enforcement officer, it is not uncommon to prepare a Search Warrant and Search Warrant Application (which set forth the location to be searched and the offense at issue) prior to completing all the necessary steps required to obtain probable cause in support of that search warrant. The search Warrant Affidavit, which accompanies the Application, contains the probable cause summary and is typically finalized after probable cause is obtained.

(Id. ¶ 4). Here, Inv. Hancock states that in addition to preparing the Affidavit and Application, he also assisted Lt. Stevens and other law enforcement officers in conducting a controlled buy using the CS. (Id. ¶ 5). According to Inv. Hancock, this CS has been used by the LCSO since approximately 2006, and has proven reliable. (Id.). Inv. Hancock notes that the reason more information has not been divulged on the CS is that he/she remains an active informant for the LCSO, and thus his/her identity must remain confidential. (Id. ¶ 7).

Specific to this case, Inv. Hancock states that on March 7, 2008, he was in close proximity to Defendant's house when the controlled buy occurred. (Id. ¶ 6). Then, immediately following the controlled buy, he spoke to the CS, who confirmed that alcohol sales were being made from the subject property. (Id.). Furthermore, Inv. Hancock stated, "I have also listened to an audio recording of the controlled buy generated from a recording

device worn by the CS during the purchase, and confirmed that [] alcohol was purchased by the CS." (Id.).

Once the controlled buy occurred, Inv. Hancock states that he returned to the LCSO and then prepared the Affidavit in support of the Search Warrant Application, labeled "Exhibit B." (Id. ¶ 8). This document along with the warrant and application were given to Lt. Stevens, who then presented all documents to Judge Elam. (Id.).

Inv. Hancock asserts that once they received word that Lt. Stevens had obtained the search warrant, he, along with other law enforcement officers, executed the search warrant. (Id.). Among the items recovered during the search was the $10.00 bill used by the CS during the controlled buy.[4] (Id. ¶ 9).

Turning to Mr. Bell's affidavit, he states that on March 7, 2008, he assisted other law enforcement officers in conducting a controlled buy by the CS at Defendant's residence. (Id. at Ex. G-2, ¶ 2). According to Hudson Bell, on March 7, 2008, he:

> accompanied the CS to a location near the subject property, and observed the CS approach the location by car. Following the controlled buy of beer by the CS, [he] accompanied the CS to a meeting location nearby, where the CS discussed the purchase with Inv. Hancock and other law enforcement officers.

(Id. ¶ 3). He also asserts that he assisted with the execution of the warrant at the subject location. (Id. ¶ 4).

---

[4] The government provided a photocopy of the $10.00 bill made prior to the purchase, as well as a copy of the $10.00 bill recovered from the search. (Doc. no. 46, Exs. G-1, G-3). The government also indicates that they provided Defendant with the photograph of the controlled buy money on February 9, 2009. (Doc. no. 46, n.1).

7

## II. ANALYSIS

### A. Probable Cause Properly Established

Defendant argues that the warrant is invalid because it was issued prior to the CS's controlled buy, and thus, did not contain a statement of probable cause. (Doc. no. 26, pp. 2, 5-7). Defendant further argues that even if the statement for probable cause had been presented to Judge Elam with the Affidavit and Application, it still could not be considered as forming adequate probable cause. Defendant argues that the search warrant does not "pass Constitutional muster" because: (1) in his statement, Lt. Stevens did not present any facts to establish the informant's reliability; (2) Lt. Stevens stated that he knew the residence at 1362 Firetower Road was a "unlicensed alcohol business" although he does not state how he knew that; (3) there was an unacceptable lack of specificity regarding from whom the beer was allegedly purchased; (4) the contraband, 6, full 12 ounce cans of beer, were time stamped to be consumed by February 27, 2008, indicating that the beer had been purchased at least three months before the controlled buy; and (5) Lt. Stevens does not indicate whether the government funds used in the controlled buy were ever identified or recovered. (Id. at 7-9). Indeed, Defendant goes so far as to suggest that there are so little facts to establish the reliability of the CS and a lack of specificity concerning the controlled buy, that in fact, there was no CS, and the controlled buy was fabricated.

The government concedes that the warrant documents are confusing. (Doc. no. 29). However, it submits that the evidence establishes that a valid search warrant existed at the time of its execution. (Id.). More specifically, the government states that the time stamps

8

on the Affidavit and Application reflect the time that they were prepared, not the time it was signed by Judge Elam. Thus, according to the government, the Affidavit and Application was prepared at approximately 4:00 p.m. on March 7, 2008, the evidence from the controlled buy was received at 5:15 p.m., the search warrant was issued at 6:14 p.m., and the warrant was executed thereafter.

As to Defendant's arguments addressing the expiration date on the beer purchased by the CS, the lack of information regarding the person who sold the beer to the CS, and the purported failure of the government to recover the funds used in the purchase, the government maintains that these factors are not relevant because they do not undermine the existence of probable cause at the time the search warrant was issued. Finally, the government asserts that even if the search warrant is found to be invalid, the United States v. Leon, 468 U.S. 897 (1984) good faith exception applies. The government has the better argument.

First, concerning the discrepancy of time between the Affidavit and Application, including Exhibit B, and the search warrant, the evidence established that the discrepancy was caused by a computer program that time stamped the documents when they were prepared. Lt. Stevens testified that when he presented Judge Elam with the search warrant application, he presented her with the Affidavit and Application, which included Exhibit B. As such, the time discrepancy was a clerical error and did not invalidate the search. United States v. Bembry, Criminal Case No. 407-154, doc. no. 59, *adopted* doc. no. 67, 2007 WL

3484226, * 5 (S.D. Ga. Nov. 14, 2007) (citing United States v. Diecidue, 603 F.2d 535, 562 (5th Cir. 1979)[5]; United States v. Wilson, 451 F.2d 209, 214 (5th Cir. 1971)).

Next, Defendant argues that there was no CS and that the controlled buy was fabricated.[6] The record refutes Defendant's argument. Inv. Hancock stated that he assisted Lt. Stevens and other officers in conducting a controlled buy using the CS. (Doc. no. 46, Ex. G-1, ¶ 5). He noted that the CS's identity must remain confidential because he remains an active informant for the LCSO. (Id. ¶ 7). Inv. Hancock stated that immediately following the controlled purchase, he spoke to the CS, who confirmed that alcohol sales were being made from Defendant's residence. (Id. ¶ 6). Additionally, Inv. Hancock stated that he listened to an audio recording of the controlled buy generated from a recording devise worn by the CS during the purchase. (Id.). In addition to Inv. Hancock's statement, Mr. Bell stated in his affidavit that he, too, assisted officers in conducting the controlled purchase by a CS at Defendant's residence. (Id. at Ex. G-2, ¶ 2). Mr. Bell stated that he accompanied the CS to a location near the subject property, and observed the CS approach the location by car. (Id. ¶ 3). Following the controlled buy, Mr. Bell accompanied the CS to a meeting location nearby, where the CS discussed the purchase with Inv. Hancock and other law enforcement officers. (Id.). Accordingly, the Court finds that the CS and controlled buy were not fabricated.

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

[6]Specifically, Defendant relied on inconsistencies between Lt. Stevens's testimony at the February 26th hearing and the record. (See doc. no. 40, p. 23).

10

Concerning Defendant's argument that the Affidavit did not provide probable cause for issuance of a warrant, whenever a search warrant application is presented to a judicial officer, the judicial officer must

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit. . . , including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (*per curiam*) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." (citation omitted)). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted). The Court is mindful, however, that "probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994) (citing Gates, 462 U.S. at 241). Moreover, these probabilities need not come from direct observation but may be inferred from the particular circumstances at issue.[7] United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990). "[P]robable cause is a fluid concept

---

[7]Notably, probable cause may be based on evidence that would not be legally competent in a criminal trial. Draper v. United States, 358 U.S. 307, 311-12 (1959).

11

turning on the assessment of probabilities in particular factual contexts...." Gates, 462 U.S. at 232.

Also, sufficient information must be presented to the judicial officer to allow for the exercise of independent judgment; the judicial officer cannot simply ratify the conclusions of others. Gates, 462 U.S. at 239. However, common sense must be employed when reading the affidavit, United States v. Ventresca, 380 U.S.102, 108 (1965), and the Court is guided by the principle that the affidavit supporting a search warrant is presumed valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). A court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination. United States v. Leon, 468 U.S. 897, 914 (1984); United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39).

Here, upon examination of the totality of the circumstances, the Court concludes that Judge Elam had a substantial basis for concluding that probable cause existed to issue the search warrant. Lt. Stevens's affidavit recounted that he has been in law enforcement for approximately 29 years. (Doc. no. 26, Ex. 2). The affidavit provided that, in his experience as an officer, Lt. Stevens found that most persons involved with selling untaxed alcoholic beverages maintain weapons and money from the sales of the illegal alcohol. Additionally,

12

the affidavit set forth that Lt. Stevens, within the past 72 hours met with a reliable CS.[8] (Id.). This reliable CS, went to 1362 Firetower Road, Lincolnton, Lincoln County, Georgia 30817 (a residence that Lt. Stevens stated he knew "as an unlicensed alcohol business") for the purpose of purchasing alcohol from the residence. (Id.). The reliable CS purchased 6 beers from the residence with a pre-recorded amount of official government funds. (Id.). After the purchase, the reliable CS turned over the contraband to Lt. Stevens. (Id.). The contraband was then identified as beer. (Id.). Furthermore, the affidavit informed Judge Elam that a check of the county computers revealed that the residence is owned by Defendant. Moreover, surveillance of the residence revealed that persons had been in and out of the residence and that the persons were observed placing beer and mixed drinks into vehicles during the surveillance. (Id.).

In sum, the Court **FINDS** that probable cause existed to support the issuance of the search warrant by Judge Elam.

**B.    Good Faith Exception**

Even if the Court had determined that probable cause to support the issuance of the

---

[8]Defendant argues that the warrant lacked probable cause because Lt. Stevens did not present any facts to establish the CS's reliability. First, as noted above, the CS's identity must remain confidential because he remains an active informant for the LCSO. Additionally,"when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002). In the Affidavit, Lt. Stevens describes the controlled purchase of alcohol with the past 72 hours by the CS; he states that 1362 Firetower Road was known to him as an unlicensed alcohol business; he states that continuing surveillance revealed that persons had been in and out of the residence on March 7, 2008; and he states that these persons were observed placing beer and mixed drinks into vehicles. (Doc. no. 26, Ex. 2). Thus, the Affidavit and Application contained independent corroboration of the CS's information.

13

warrant had not been established, the evidence discovered as a result of the execution of the contested search warrant would be admissible under the "good-faith" exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and the judicially created remedy known as the exclusionary rule acts as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search. United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002). However, under Leon, the good-faith exception allows the introduction of evidence in the prosecution's case in chief that is "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." Leon, 468 U.S. at 913. The Leon Court explained that the good-faith exception to the exclusionary rule was appropriate because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. Thus, under Leon, the question becomes whether the officers executing the warrant reasonably relied on Judge Elam's determination of probable cause. See id. at 913.

Under Leon, there are four scenarios under which the good-faith exception to the exclusionary rule would not apply. Id. at 923. The exception does not apply where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. Id. Nor does the exception apply in cases where the issuing judge "wholly abandoned" his or her detached

14

and neutral judicial role such that no reasonably well trained officer would rely on the warrant. Id. The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid. Id.

Here, Defendant argues that Lt. Stevens was dishonest or reckless in his Affidavit and Application because, according to Defendant, there was no CS and the controlled buy was fabricated. However, as stated above, there is ample evidence in the record that shows that there was a CS and that the controlled buy occurred. To the extent that Defendant suggests that the warrant was "facially deficient" (because of the time stamps on the documents) such that the executing officers could not reasonably presume its validity, as previously noted, the discrepancy in the time stamp is a technical error that does not invalidate the search warrant. Similarly, the record does not reflect that Judge Elam "wholly abandoned" her detached and neutral judicial role such that no reasonably well trained officer would rely on the warrant. Indeed, Judge Elam confirms in her affidavit that although she did not notice the incorrect times printed on the documents, she "concentrated primarily on the paragraph in Exhibit B that stated that a confidential informant had illegally purchased alcohol at the Defendant's residence within the past seventy two hours and the oral statement to the same effect from Lt. Stevens." (Doc. no. 40, Ex. 7, ¶ 2). Thus, unless the warrant was so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable, the good faith exception could be applied in this case. See Leon, 468 U.S. at 923. However, as set forth above, there were

multiple factors presented in Lt. Stevens's affidavit that supported a finding of probable cause. Accordingly, it was not unreasonable to believe that probable cause existed.

In sum, the Court **FINDS** that even if probable cause to support the issuance of the warrant had not been established, a position discredited above in Part II(A), the evidence discovered as a result of the execution of the contested search warrant would be admissible under the good-faith exception to the exclusionary rule set forth in Leon.

### III. CONCLUSION

In conclusion, the Court finds that the search warrant issued by Judge Elam, authorizing the search of Defendant's residence, was supported by probable cause. Alternatively, the Court finds that even if probable cause to support the issuance of the warrant had not been established, the evidence discovered as a result of the resultant search would be admissible under the good-faith exception set forth in United States v. Leon, 468 U.S. 897 (1984). Therefore, the Court **REPORTS** and **RECOMMENDS** that the motion to suppress be **DENIED**.

SO REPORTED and RECOMMENDED this 5th day of May, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE